**Earnest Lee WADE, Appellant,**

v.

**A.L. LOCKHART, Director, Arkansas Department of Corrections, Appellee.**

**No. 83–1537.**

United States Court of Appeals, Eighth Circuit.

Submitted March 11, 1985.

Decided June 6, 1985.

Brent Baber, Little Rock, Ark., for appellant.

Ted Holder, Asst. Atty. Gen., Little Rock, Ark., for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and FAGG, Circuit Judge.

FAGG, Circuit Judge.

Earnest Lee Wade appeals from the district court's denial of his petition for writ of habeas corpus brought under 28 U.S.C. § 2254. We reverse and remand.

In 1977, Earnest Lee Wade was an inmate at the Cummins Unit of the Arkansas Department of Corrections. Wade was at that time serving a fifteen year sentence stemming from a variety of convictions, including grand larceny, burglary, and armed robbery. Wade was scheduled to become eligible for parole in June of 1979.

In June of 1977, however, prison officials received a court order from the Union County Circuit Court that purported to grant Wade immediate release on the basis of a motion for postconviction relief. Upon receiving this order, prison officials consulted the state attorney general's office to verify the order's authenticity. After prison officials received official verification from the attorney general's office, Wade was released.

Several months later, Wade was arrested on an unrelated matter and was confined in the Columbia County Jail. During a search of Wade's cell following his transfer back to Cummins, jail officials discovered a copy of the court order that had resulted in Wade's original release. Jail officials also found blank stationery bearing the letter-

head of the Union County Circuit Court. An investigation was then undertaken into Wade's prior release. On the basis of this investigation, officials learned that the court order granting Wade's release was a forgery. Largely on the basis of this investigation, Wade was charged with second degree forgery and second degree escape. Although he was eventually acquitted of the forgery charge, Wade was convicted of second degree escape.

After his conviction, Wade's court-appointed lawyer filed a motion to proceed in forma pauperis on appeal. In conjunction with this motion, Wade filed an affidavit detailing his financial situation. In this affidavit, Wade stated that he owned a one-third interest in 182 acres of land located in Flint, Michigan. On the basis of this statement, the state court denied Wade's motion to proceed in forma pauperis and dismissed his court-appointed lawyer.

Approximately one week after his motion was denied, Wade sent a letter to the state court requesting an evidentiary hearing on his financial ability to retain private counsel on appeal. In this letter, Wade stated that while he had an "interest in real property," he did not "expect to receive any benefits from the property for several months, and [did not] have any funds * * * to pay fees for an appeal." No action was ever taken on Wade's request for an evidentiary hearing, and the State has never suggested that Wade's letter (which was specifically addressed to the Lincoln Circuit Court and which specifically referenced Wade's criminal docket number) was not received by the court and brought to the attention of the state court judge.

In his habeas corpus petition, Wade asserts that the letter to the state court called into question the sole basis for the court's denial of his in forma pauperis motion and thus obligated the state court to conduct an evidentiary hearing both to determine the nature of his property interest and to determine his actual ability to retain counsel on appeal. Wade argues that if in fact he was indigent at the time of his conviction, the state court's failure to conduct such a hearing deprived him of his constitutional right to be represented by counsel on his first appeal of right. We agree.

The question presented by Wade's petition is similar to that presented to this court in *United States v. Cohen*, 419 F.2d 1124 (8th Cir.1969). In *Cohen*, the defendant (Cohen) stated during his arraignment that he could not afford to retain counsel because all his money and assets were "committed." *Id.* at 1125. In the course of the court's questioning, however, Cohen acknowledged that he did have an interest in approximately 1500 acres of land, but again emphasized that despite this interest he could not afford to retain private counsel because all of his money was "committed." *Id.*

The district court made no further inquiry into the actual financial status of Cohen. Instead, on the basis of Cohen's statement that he had some unidentified interest in 1500 acres of land, the court refused to appoint counsel. Cohen was eventually convicted following a trial at which he represented himself.

On appeal, this court reversed Cohen's conviction. The court held that once Cohen indicated an inability to employ private counsel, "the district court was under a duty to make further inquiry, by whatever means appropriate, into [Cohen's] financial condition in order to satisfactorily determine whether * * * he could *in fact* afford to employ an attorney." *Id.* at 1127 (emphasis in original). On remand, this court required the district court to appoint counsel to represent Cohen "unless, after full and adequate inquiry, it appears that [Cohen] is then in a position to afford private counsel of his own choice." *Id.* The *Cohen* court concluded that such inquiry was necessary in order to protect properly Cohen's sixth amendment right to be represented by counsel at trial. *Id.; see also United States v. Anderson*, 567 F.2d 839, 840–41 (8th Cir.1977) (discussing *Cohen* as a sixth amendment case).

Unlike *Cohen*, which implicated a criminal defendant's sixth amendment right to

be represented by counsel at trial, this case implicates the criminal defendant's fourteenth amendment right to be represented by counsel on his first appeal of right. *See Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Riley v. Lockhart,* 726 F.2d 421, 423 (8th Cir.1984). Despite this distinction, however, the State has presented no convincing reasons why the standard of inquiry applicable under the sixth amendment should not also be applicable under the fourteenth amendment. The constitutional right to be represented by competent counsel plays a central role in the fair administration of our criminal justice system, and this right is no less important on appeal than at trial. Given this fact, we conclude that the standard of inquiry set out by this court in *Cohen* is fully applicable to the present action. Thus, once a defendant indicates an inability to retain counsel on appeal, the court is under an obligation to undertake a full and adequate inquiry by whatever means are appropriate in order to determine satisfactorily whether the defendant can *in fact* afford to retain private counsel. *See Cohen,* 419 F.2d at 1127.

Applying this standard to the present action, we find that the state court failed to make such an inquiry. Here, in his affidavit in support of a motion to proceed in forma pauperis on appeal, Wade disclosed an undefined one-third interest in 182 acres of property. On this basis, the state court denied Wade's motion. This action was initially appropriate since Wade's affidavit did not indicate any inability on his part to use the value of this one-third interest to in some way enable him to retain counsel. However, in his subsequent letter, Wade specifically stated that he expected to receive no benefit from the property for several months and indicated further a general inability to retain counsel. In so doing, Wade called into serious question the basis for the state court's original denial and thus there arose an obligation on the part of the state court to inquire further into Wade's financial status. The state court's failure to do so was error and may have resulted in the denial of Wade's fourteenth amendment right to be represented by counsel on appeal if in fact Wade was indigent at that time.

Because Wade's constitutional right to be represented by counsel may have been violated, we reverse the district court's denial of Wade's petition. We remand the case back to the district court to conduct an evidentiary hearing to determine Wade's financial status at the time of his state criminal conviction. In so doing, the district court will be able to determine whether the state court's failure to conduct a full and adequate inquiry at the time of Wade's conviction had the effect of denying Wade his constitutional right to be represented by counsel on his first appeal of right. Because of our present disposition of this case, we need not address the other issues raised in Wade's petition.

Reversed and remanded.