**UNITED STATES of America,**

v.

**Vincent KNOTT, Defendant.**

**No. 01 CR. 245(JSM).**

United States District Court,
S.D. New York.

April 20, 2001.

---

**26.** *See* Davis Dep. 11/3/99 at 9.

**27.** *See* Davis Dep. 10/13/99 at 176–77.

### MEMORANDUM OPINION
### AND ORDER

MARTIN, District Judge.

The federal courts provide a high level of representation to defendants who cannot afford to retain counsel. The truly indigent often receive better representation than the defendant with a small amount of money who is able to retain private counsel. In this case, a defendant, indicted in a multi-defendant RICO case that the Government estimates will require a month to try, has assets in excess of $50,000. Despite possessing what many truly indigent defendants would consider great wealth, this defendant has asked to be assigned counsel under the Criminal Justice Act. In order not to delay the scheduled trial or prejudice the defendant's preparation for trial, the Court tentatively appointed counsel while it attempted to resolve the question of the defendant's right to assigned counsel.

The Criminal Justice Act provides that the Court shall appoint counsel "for any person financially unable to obtain adequate representation...." 18 U.S.C. § 3006A(a). However, the Act provides no criteria for determining whether a defendant is "financially unable" or what constitutes "adequate representation."

■ To qualify for the appointment of counsel, one need not be totally without means. In this context, indigence is a "relative concept." *Hardy v. United States*, 375 U.S. 277, 289 n. 7, 84 S.Ct. 424, 431 n. 7, 11 L.Ed.2d 331 (1964) (Goldberg, J., concurring). In determining whether a defendant is financially unable to afford counsel, courts generally attempt to consider the economic realities facing the defendant, i.e., the realistic costs of defense and the financial needs of the defendant and his family. *See United States v. Harris*, 707 F.2d 653, 661–62 (2d Cir.1983).[1]

The court has little doubt that, if the defendant was willing to pay a $50,000 retainer, he could find a lawyer with some experience in criminal law to represent him. However, with a trial estimate of one

---

1. In *United States v. Barcelon*, 833 F.2d 894, 897 n. 5 (10th Cir.1987), the Court catalogued some of the factors that courts examine in addition to the defendant's assets, liabilities, income, and obligations, as follows:

   [T]he needs of the defendant and his family, *United States v. Harris*, 707 F.2d 653, 661 (2d Cir.), *cert. denied*, 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983); *U.S. v. Bracewell*, 569 F.2d 1194, 1200 (2d Cir. 1978); the amount the defendant posted as bail, *see* VII Guide to Judiciary Policies and Procedures: Appointment of Counsel in Criminal Cases ¶ 2.04, at 2–11 (1987); the expense and extent of legal services which the defendant requires, *Harris*, 707 F.2d at 661; *United States v. Coniam*, 574 F.Supp. 615, 618 (D.Conn.1983); *United States v. Hennessey*, 575 F.Supp. 119, 121 (N.D.N.Y. 1983), *aff'd*, 751 F.2d 372 (2d Cir.1984); amounts given the defendant by others for limited purposes only, *Bridges v. United States*, 588 F.2d 911, 912 (4th Cir.1978); *United States v. Bursey*, 515 F.2d 1228, 1236 (5th Cir.1975); whether the defendant has secreted assets, *United States v. Rubinson*, 543 F.2d 951, 964 (2d Cir.), *cert. denied*, 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124 (1976); *United States v. Schmitz*, 525 F.2d 793, 794–95 (9th Cir.1975); and the availability of income to the defendant from other sources such as a spouse, *United States v. Caudle*, 758 F.2d 994 (4th Cir. 1985), or trusts, estates or the like. *See, e.g., United States v. Kahan*, 415 U.S. 239, 94 S.Ct. 1179, 39 L.Ed.2d 297 (1974); *Schmitz*, 525 F.2d at 794–95. In addition to these factors the court may also refuse to appoint counsel if it finds that the defendant's portrayal of financial inability lacks credibility. *See United States v. Binder*, 794 F.2d 1195, 1202 (7th Cir.), *cert. denied*, 479 U.S. 869, 107 S.Ct. 234, 93 L.Ed.2d 159 (1986); *United States v. Kelly*, 467 F.2d 262, 266 (7th Cir.1972); *United States v. Martinez-Torres*, 556 F.Supp. 1275, 1280 (S.D.N.Y.1983); *United States v. Wright*, 478 F.Supp. 1178 (S.D.N.Y.1979).

month and thousands of documents to be copied and reviewed, it is doubtful that a lawyer of the competence of the defendant's assigned counsel would be willing to agree to represent the defendant through trial and a possible sentence for the sum of $50,000.

■ To meet the statutory mandate to provide "adequate representation" to indigent defendants, this Court has established a screening panel to identify attorneys with sufficient skill and experience to provide proper representation as assigned counsel. In effect, this panel determines the level of skill and experience that will be considered necessary to provide "adequate representation" in this District. It would be illogical to hold that someone with limited financial resources should be required to retain an attorney who does not meet the same standard. Thus, the fact that this defendant might be able to hire an attorney of lesser skill than a lawyer the Court would appoint should not preclude him from obtaining assigned counsel.

Moreover, the defendant contends that, while he may have $50,000 in mutual funds at the moment, his monthly expenses exceed his income and he has debts and financial obligations to his family that must be considered in determining the amount he could reasonably be expected to pay counsel.

■ In enacting the Criminal Justice Act, Congress recognized that there would be instances in which defendants who qualified for appointment of counsel would have sufficient assets to pay at least part of the costs of their defense. Thus, 18 U.S.C. § 3006A(f) provides:

Whenever the United States magistrate or the court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid to the appointed attorney, to the bar association or legal aid agency or community defender organization which provided the appointed attorney, to any person or organization authorized pursuant to subsection (e) to render investigative, expert, or other services, or to the court for deposit in the Treasury as a reimbursement to the appropriation, current at the time of payment, to carry out the provisions of this section.

On April 11, 2001, the Court held a conference to review the defendant's financial resources and obligations in order to enable it to fix an amount that the defendant should be required to pay to the Treasury as a condition of the appointment of counsel. Upon further consideration, however, the uncertainty concerning the future course of this case and the future needs of the defendant and his family suggest that ordering the payment of a lump sum at this time may result in either an injustice or a windfall to the defendant. For, example, if the Court were to fix a reasonably high amount and the defendant was thereafter to be offered and accept a favorable disposition early in the proceedings, the costs of his defense might be less than the amount he had been required to pay. Conversely, if the case went to trial and the Court had overestimated the future needs of the defendant's family, the amount Defendant was ordered to pay might be too low.

Given the present status of the case, it appears unwise to order the defendant to make a lump sum payment at this time. Rather, it is more appropriate to require the defendant to bear the cost of his defense until such time as his reasonably available financial resources are exhausted. Thus, the Court hereby directs assigned counsel to render to the defendant a monthly statement of her time and ex-

penses, calculated at the rate to which she is entitled under the Criminal Justice Act. Within two weeks of receiving each monthly statement, the defendant is to pay the amount billed or make an application to the Court to be relieved of any further obligation to pay for his defense. Such an application shall contain a statement signed under penalty of perjury setting forth the defendant's assets and liabilities as well as his monthly income and expenses.

**SO ORDERED.**