MARY'S OPINION HEADING 







                                                                                    NO. 12-04-00160-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
REUBEN CLEMONS,                                       §     APPEAL FROM THE 145TH
APPELLANT

V.                                                                         §     JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §     NACOGDOCHES COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Appellant Reuben Clemons appeals his conviction for burglary of a habitation. In four
issues, he challenges the admissibility of certain evidence, the legal and factual sufficiency of the
evidence, and his trial counsel’s performance. We affirm.
 
Background
            On September 12, 2003, Appellant was indicted for burglary of a habitation,


 a first degree
felony punishable by imprisonment for 25 years to life and a fine of not more than $10,000. See
Tex. Pen. Code Ann. §§ 12.32, 30.02(a)(1), (d)(1) (Vernon 2003).
            At trial, Candice Tatum testified that she lived at 512 Sweetgum in Nacogdoches. On
June 16, 2003, she was awakened in the early morning and saw a man running down the hallway and
out the door of her house. The man was carrying her sister’s purse. Ms. Tatum testified that
although she did not see the man’s face, she had a clear view of his clothing and distinctive braided
hairstyle. 
            Approximately seventeen minutes after the incident at Ms. Tatum’s house, Melinda Edwards
observed a man wearing the same clothing and hairstyle standing outside the front window of her
house at 223 Lamar. According to Ms. Edwards, the man had a bag or purse under his arm. Ms.
Edwards called the police to report the man in her yard. The Edwards house was located four
hundred yards north of the Tatum house.
            Sometime later, Ms. Edwards again observed a man outside her window. She testified that
she knew he was the same man she had seen earlier because he wore the same clothing and hairstyle. 
However, he was no longer carrying the bag or purse. Ms. Edwards did not see the face of the man
the first time he appeared at her house. She testified that the second time, she “saw his face, but I
was so scared I didn’t see his face.” Appellant was soon discovered in a nearby wooded area and
taken into custody by Nacogdoches police. The officers took him to Ms. Tatum’s house, where she
identified him as the man who was in her house earlier that morning. The missing purse was later
found by a jogger a few hundred yards from the Edwards residence. 
            At trial, Ms. Edwards was asked if she saw the man in the courtroom who had been in her
yard. Ms. Edwards answered that “he” looked different in the courtroom because his hair was not
braided. Consequently, she was unable to say that Appellant was the man she had seen outside her
home on June 16. She was then shown a booking photograph of Appellant taken at or near the time
of his arrest from which she identified Appellant as the man she had seen in her yard. 
            The jury found Appellant guilty, and the trial court assessed punishment at imprisonment for
thirty years. This appeal followed.
 
Admission of Extraneous Conduct Testimony
            In his first issue, Appellant contends the trial court erred during the guilt-innocence phase
of the trial by allowing testimony about extraneous conduct over his objection. He contends that
Rule 404(b) of the Texas Rules of Evidence prohibited the introduction of the testimony because it
was not relevant to any issue in the case and was offered only to show a general criminal propensity. 
See Tex. R. Evid. 404(b). The State argues that the testimony was properly admitted because
Appellant raised the issue of identity through his claim of alibi and through cross examination. 
Extraneous Conduct Evidence and Standard of Review
            Evidence of a defendant’s extraneous conduct cannot be introduced at the guilt-innocence
phase of the trial to show that the defendant acted in conformity with his criminal nature and
therefore committed the crime for which he is on trial. Tex. R. Evid. 404(b); Lockhart v. State, 847
S.W.2d 568, 570 (Tex. Crim. App. 1992). The defendant should be tried only for the crime alleged
in the indictment and not for being a criminal generally. Abdnor v. State, 871 S.W.2d 726, 738
(Tex. Crim. App. 1994). However, evidence of extraneous conduct may be admissible for other
purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of
mistake or accident. Tex. R. Evid. 404(b). 
            We review the trial court’s determination of admissibility for purposes other than character
conformity under an abuse of discretion standard. Montgomery v. State, 810 S.W.2d 372, 391 (Tex.
Crim. App. 1990) (op. on reh’g). So long as the trial court’s ruling was within the zone of
reasonable disagreement, we will not disturb it on appeal. Id.
Analysis
            Identity and the rebuttal of defenses are both valid purposes for admitting evidence of
extraneous conduct. Harvey v. State, 3 S.W.3d 170, 175 (Tex. App.–Houston [14th Dist.] 1999, pet.
ref’d). Such evidence may be admissible to show identity only when identity is an issue in the case. 
Lane v. State, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996). The issue of identity may be raised
by the defendant during cross examination of the State’s witnesses. Id. 
            Here, Appellant’s primary defense was alibi, which he raised through the testimony of his
former father in law and his wife. Moreover, when Ms. Edwards testified, Appellant’s counsel made
a point on cross examination that Ms. Edwards could not positively identify Appellant as the man
she had seen standing outside her residence on June 16. Thus, identity was an issue in the case.
            Merely raising the issue of identity does not, however, automatically render extraneous
conduct admissible. Id. “To be admissible to show identity, [the] extraneous [conduct] must be so
similar to the offense charged that the offenses are marked as the accused’s handiwork.” Id. The
evidence of the other conduct is offered as circumstantial evidence of the identity of the accused as
the perpetrator of the principal case. See Ford v. State, 484 S.W.2d 727, 729 (Tex. Crim. App.
1972). If there is some distinguishing characteristic common both to the extraneous conduct and the
offense for which the accused is on trial, then an inference may be drawn that the accused was the
person who committed the primary offense. See id. Sufficient similarity may be demonstrated “by
proximity in time and place or by a common mode of committing the offenses.” Lane, 933 S.W.2d
at 519. 
            Appellant contends that Ms. Edwards’s testimony was inadmissible because “[n]othing in
[the] testimony could be consider[ed] as similar to the offense charged in the indictment, if an
offense at all.” We disagree. First, the events at the Tatum and Edwards residences transpired in the
early morning of June 16 within 400 feet of each other. Second, the Tatum burglary and the report
of a prowler at the Edwards residence were approximately seventeen minutes apart. Finally, Ms.
Edwards and Ms. Tatum gave substantially similar descriptions of the clothing, hairstyle, and general
height and weight of the perpetrator. 
            We conclude that this evidence establishes the requisite similarity between the extraneous
conduct and the charged offense to render the extraneous conduct evidence admissible. Therefore,
the trial court did not abuse its discretion in admitting the testimony of Ms. Edwards. Appellant’s
first issue is overruled.
 
                                                   Sufficiency of the Evidence
            Appellant contends in his second issue that the evidence was legally insufficient to support
his conviction. In his third issue, he challenges the factual sufficiency of the evidence. In both
issues, he argues that his conviction cannot stand because of conflicting witness testimony that fails
to identify him as the perpetrator. 
Standard of Review
            In reviewing the legal sufficiency of the evidence, we must view the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); see also Johnson v. State, 871 S.W.2d 183,
186 (Tex. Crim. App. 1993). 
            In reviewing the factual sufficiency of the evidence, we must determine whether considering
all the evidence in a neutral light, the jury was rationally justified in finding guilt beyond a
reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). Evidence can be
factually insufficient if the evidence supporting the verdict, considered by itself, is too weak to
support the finding of guilt beyond a reasonable doubt, or contrary evidence is so strong that guilt
cannot be proven beyond a reasonable doubt. Id. at 484-85. Our evaluation should not intrude upon
the fact finder’s role as the sole judge of the weight and credibility given to any witness’s testimony. 
Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). 
            A person commits burglary of a habitation who, without the effective consent of the owner, 
enters a habitation with the intent to commit theft. Tex. Pen. Code Ann. § 30.02(a)(1). The only
contested issue in the case at hand was identity.
Legal Sufficiency
            Viewed in the light most favorable to the verdict, the evidence shows that in the early
morning of June 16, 2003, Candice Tatum awakened to see a man running down the hallway and out
the door of her house carrying her sister’s purse. She described the man as five feet, ten or eleven
inches tall, weighing 150 pounds, and wearing black shoes with no socks, black shorts, and a
turquoise or blue shirt with a collar. She also testified that he had braids in his hair. At about 4:00
a.m., the Nacogdoches police brought Appellant to Ms. Tatum’s house at 512 Sweetgum, and she
positively identified him as the person who was in her house earlier in the morning. Ms. Tatum
testified that she had never seen Appellant before and that neither she nor anyone else, to her
knowledge, had invited him into her house. From this evidence, a rational trier of fact could have
found the essential elements of burglary of a habitation beyond a reasonable doubt. Therefore, this
evidence is legally sufficient to support Appellant’s conviction. Appellant’s second issue is
overruled.
Factual Sufficiency
            In viewing the record as a whole, we note that, in addition to the testimony described above, 
Melinda Edwards testified that in the early morning of June 16, she saw a man looking in her
window. She described the man was a black male, five feet, ten inches tall, and weighing 130
pounds. She also said the man she saw was wearing dark “longer” shorts, some type of dark tee
shirt, and tennis shoes and had black braided or plaited hair. Ms. Edwards also testified that the man
she saw looking in her window was carrying a bag or purse under his arm. She stated that the same
person appeared at her window again later and that she knew it was the same person because he was
wearing the same clothes and hairstyle. Although Ms. Edwards could not make a positive courtroom
identification, she was shown a booking photograph of Appellant and stated “that is the guy that was
at my house that night.” She noted that Appellant looked different in the courtroom because his hair
was not braided and could not say that he was the same person who was in her yard on June 16.
            Appellant contends that the descriptions and testimonies given by Ms. Tatum and Ms.
Edwards relating to Appellant’s identity irreconcilably conflicted. He also argues that the State’s
witnesses never actually saw the perpetrator’s face and that the accuracy of the alleged identifications
is highly suspect. Finally, he argues that the similarity of clothing and hairstyle also fails as a means
of identification because it constitutes nothing more than speculation by the State’s witnesses.
            The State counters that both Ms. Tatum and Ms. Edwards positively identified Appellant. 
By his clothing and hairstyle, Ms. Tatum identified Appellant as the person she had seen running out
of her house on June 16. Ms. Edwards identified Appellant from a booking photograph, although
she could not identify him in the courtroom because he had changed his hairstyle.
            The jury is the exclusive judge of the credibility of witnesses and of the weight to be given
their testimony. Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). It is also the
exclusive province of the jury to reconcile conflicts in the evidence. Id. In our view, the
descriptions given by Ms. Tatum and Ms. Edwards are not significantly different. Therefore, the jury
could reasonably have resolved any conflicts between them in favor of the State. Moreover, the jury
reasonably could have decided to give little, if any, weight to the fact that neither woman saw the
perpetrator’s face because of the similar descriptions, the proximity of the two incidents as to time
and place, the two appearances of a prowler at the Edwards house, the first while carrying a purse
or bag and the second without it, and the proximity of the Edwards house to the location where the
purse was found. Therefore, viewing the record in a neutral light, we cannot conclude that the
evidence supporting the verdict, considered by itself, is too weak to support the finding of guilt
beyond a reasonable doubt, nor that the contrary evidence is so strong that the State could not have
met its burden of proof. Consequently, the evidence was factually sufficient to support the verdict. 
Appellant’s third issue is overruled.
 
Ineffective Assistance of Counsel
            In his fourth issue, Appellant argues that his trial counsel was ineffective because he did not
obtain a limiting instruction during the guilt-innocence phase of the trial regarding the admission of
the extraneous conduct. He also complains that trial counsel was ineffective for not requesting a
limiting instruction in the jury charge regarding the same extraneous conduct.
            Both the United States and Texas constitutions guarantee an accused the right to assistance
of counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10. This right necessarily includes the
right to reasonably effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686,
104 S. Ct. 2052, 2063, 80 L. Ed. 2d 674 (1984); Ex parte Harris, 596 S.W.2d 893, 896 (Tex. Crim.
App. 1981). To prove ineffective assistance of counsel, Appellant must show that counsel’s
performance was deficient and that the deficient performance prejudiced the defense. See
Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. Counsel’s performance is measured by
reasonableness under prevailing professional norms. Hernandez v. State, 726 S.W.2d 53, 55 (Tex.
Crim. App. 1986) (citing Strickland, 466 U.S. at 694, 104 S.Ct. at 2068). 
            Judicial scrutiny of counsel’s performance must be highly deferential, and we are to indulge
the strong presumption that counsel was effective and that his actions and decisions were motivated
by sound trial strategy. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To rebut
this presumption, an appellant must present evidence illustrating why his counsel did what he did. 
Id. Moreover, an appellant must prove his claims by a preponderance of the evidence. Jackson v.
State, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). Whether counsel adhered to the Strickland
standard is determined by examining the totality of the circumstances rather than by focusing on
isolated acts or omissions. Butler v. State, 716 S.W.2d 48, 54 (Tex. Crim. App. 1986). Any
allegation of ineffectiveness must be firmly founded in the record. Rodriguez v. State, 899 S.W.2d
658, 665 (Tex. Crim. App. 1995). Any allegation of ineffectiveness must be firmly founded in the
record, and the record must affirmatively demonstrate the alleged ineffectiveness. Thompson v.
State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). 
            Here, nothing in the record shows the reason trial counsel did not obtain a limiting instruction
regarding Appellant’s extraneous conduct. An appellate court is not required to speculate on the
reasons behind trial counsel’s actions when confronted with a silent record. Jackson, 877 S.W.2d
at 771; see also Thompson, 9 S.W.3d at 14 (holding that when presented with a silent record,
appellate court should be hesitant to declare ineffective assistance of counsel). Because Appellant
has not provided this court with any evidence to affirmatively demonstrate the ineffectiveness of his
trial counsel, he has not satisfied his burden on appeal to rebut the presumption that counsel’s actions
were reasonably professional and motivated by sound trial strategy. Moreover, even if Appellant had
shown that his counsel was ineffective, he has made no showing that, but for his counsel’s
unprofessional errors, the result of the proceeding would have been different. Appellant’s fourth
issue is overruled.
 
Conclusion
            Having overruled Appellant’s four issues, the judgment of the trial court is affirmed.
 
 
                                                                                                    DIANE DEVASTO 
                                                                                                                 Justice
 
 
 
Opinion delivered December 14, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.















( DO NOT PUBLISH)